UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| MEGAN FIFE, )<br>    Plaintiff, )<br>)<br>        v. )<br>)<br>JOHN BUNCICH, individually and )<br>in his capacity of the Sheriff of Lake )<br>County Indiana, *et al.*, )<br>    Defendants. ) | CAUSE NO.: 2:13-CV-233-JEM |

**OPINION AND ORDER**

This matter is before the Court on Sheriff Defendants' Motion for Summary Judgment [DE 31], filed by Defendants Lake County Indiana Sheriff's Department and Sheriff John Buncich, individually and in his capacity as Sheriff of Lake County, Indiana, (collectively the "Sheriff Defendants") on February 2, 2016. Plaintiff filed her response on March 3, 2016, and the Sheriff Defendants filed their reply on March 10, 2016. The Sheriff Defendants request that the Court enter judgment in their favor on all Plaintiff's claims.

**I.    Procedural Background**

On July 12, 2013, Plaintiff Megan Fife filed a Complaint, alleging that the Defendants were liable to her under 42 U.S.C. section 1983 for violating her right to be free from unreasonable searches and seizures under the Fourth Amendment. The Sheriff Defendants filed their Answer to Plaintiff's Complaint on October 10, 2013.

Upon consent of the parties, this case was reassigned to the undersigned United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case under 28 U.S.C. section 636(c).

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted). To demonstrate a genuine issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all justifiable inferences in favor of that party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

**III. Facts[1]**

On July 13, 2011, officers from the Lake County Sheriff's Department responded to a call about a hit-and-run in Crown Point, Indiana. The victim of the hit-and-run notified the officers that Dustin Musgrave, driving a red Ford F-150 truck, had driven through the victim's fence and had hit the victim with the truck. The victim also told the officers that Dustin's brother, Damon Musgrave, had accompanied Dustin in a green Jeep Cherokee.

The Musgrave brothers lived close to the victim's home, so the officers went to their residence (the "Musgrave Residence"), where the saw a green Jeep Cherokee parked in the driveway. Sergeant Oscar Martinez and Officer Don Hamm knocked on the front door of the Musgrave Residence. Sergeant Martinez notified Leslie Musgrave, the owner of the home, that they were looking for Dustin and Damon in connection with a hit-and-run that had injured someone. Leslie refused to let the officers in the home.

The officers then set up a perimeter around the Musgrave Residence. Officer Douglas Parker walked into the backyard with a canine. While in the backyard, Officer Parker saw a basement window open for a few seconds and then close. The window opened a second time, and Officer Parker saw Plaintiff looking out the window. Plaintiff then crawled out of the house through the window, stood up in the backyard, and looked around. Officer Parker shouted to Plaintiff, identifying himself as a police officer. According to the Sheriff Defendants, Officer Parker then

---

[1] These facts are taken from the parties' summary judgment briefs and, unless noted otherwise, are undisputed. Although Plaintiff did not include a formal "Statement of Genuine Disputes" despite Northern District of Indiana Local Rule 56-1's requirement that she do so, the Court does not find that Plaintiff has "admitted" Defendant's factual statements, as Defendant argues. Though not formally stated as disputes, the Plaintiff sufficiently alerted the Court to factual disputes by describing her version of the facts and providing specific citations to the relevant record evidence. *See Thiele v. Norfolk and W. Ry. Co.*, 873 F. Supp. 1240, 1243 (N.D. Ind. Dec. 15, 1994) (noting under a previous but substantially similar version of Rule 56-1 that its purpose is to allow the district court to "readily determine whether genuine issues of material fact exist"). The Court disfavors this approach, but will allow Plaintiff's arguments to succeed or fail on the merits rather than fail on this procedural defect.

warned that if Plaintiff did not get on the ground, the dog would be released. According to Plaintiff, Officer Parker gave no such warning.

Plaintiff turned around to face the window. The parties dispute whether Plaintiff crouched down as though to crawl back into the window or whether she remained standing. Officer Parker stated in a deposition that he believed Plaintiff was preparing to crawl back into the house. Dep. of Officer Parker, p. 36, l. 1-5. Officer Parker then released his canine. The canine apprehended Plaintiff and she was handcuffed by another officer and placed under arrest.

At the time of this incident, Chapter 16.07.00 of the Lake County Sheriff's Department Rules and Regulations contained a policy about using canines for suspect apprehension. The policy states that a canine handler should ensure that they are apprehending the correct suspect and that, where possible, the handler should warn the suspect before releasing the canine. Together, Officer Parker and his canine completed a five-week canine training program in 2008, which included training on suspect apprehension.

**IV.     Analysis**

The Complaint included claims against the Sheriff Defendants under 42 U.S.C. section 1983, which provides civil cause of action by a plaintiff who has been injured by state action that deprives the plaintiff of some constitutional right. The Sheriff Defendants have moved for summary judgment on Plaintiff's 1983 claims, each of which will be discussed in turn.

    A.     Plaintiff's Official-Capacity Claims

The Sheriff Defendants argue that the Court should enter summary judgment in Sheriff Buncich's favor on all official-capacity claims. They assert that Plaintiff cannot maintain claims against Sheriff Buncich in his official capacity while simultaneously pursuing claims against the

entity he represents – the Sheriff's Department. Plaintiff's response brief was silent on this issue.

Courts construe a suit against a municipal official as a suit against the municipality itself. *Yeksigian v. Nappi*, 900 F.2d 101, 103 (7th Cir. 1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 166-167, n. 14 (1985)). Local "government liability under § 1983 is 'dependant on an analysis of state law.'" *Sow v. Fortville Police Dept.*, 636 F.3d 293, 300 (2011) (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997)). Under Indiana law, municipal police departments are not capable of suing or being sued on their own behalf. Ind. Code §§ 36-1-2-10, 36-1-2-11, 36-1-2-23; *see also Sow*, 636 F.3d at 300 (holding that "the Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued"). However, when acting in their law enforcement capacity, county sheriff's departments may appear in a lawsuit. *Arganoda v. Lake Cnty. Sheriff's Dept.*, No. 2:06-CV-259, 2007 WL 518799, at *2-5 (N.D. Ind. Feb. 13, 2007).

The Court construes Plaintiff's official-capacity claims against Sheriff Buncich as claims against the Lake County Sheriff's Department.[2] *Yeksigian*, 900 F.2d at 103. To support their assertion that Plaintiff cannot maintain her claims against both Sheriff Buncich and the Lake County Sheriff Department, the Sheriff Defendants cite *Estate of Szuflita v. City of South Bend, Indiana*, 3:10-CV-346, 2012 WL 1095377 (N.D. Ind. Mar. 30, 2012). In *Szuflita*, summary judgment was granted in favor of police officers who had been sued in their official capacities alongside both the City of South Bend and the South Bend Police Department.

However, *Szuflita* does not support the Sheriff Defendants' argument that Plaintiff cannot sue both Sheriff Buncich and the Sheriff's Department. The *Szuflita* court granted summary

---

[2] While Plaintiff's claims against Lake County were dismissed by this Court's order in May 2015, the order did not dismiss Plaintiff's claims against Defendant Buncich or the Sheriff's Department. Under Indiana law, Lake County and the Lake County Sheriff's Department are separate municipal entities, each subject to suit under section 1983. *See Argandona v. Lake Cnty. Sheriff's Dept.*, 2:06-CV-259, 2007 WL 518799, at *5 (N.D. Ind. Feb. 13, 2007).

judgment in the officers' favor because the court had already granted summary judgment against the municipal entities that the officers represented. *Szuflita*, 2012 WL 1095377 at *3. Instead of supporting the Sheriff Defendants' argument, *Szuflita* suggests that if the Court were to enter summary judgment on Plaintiff's official-capacity claims, it would also be obligated to enter summary judgment on Plaintiff's claims against the Sheriff's Department because those claims are one and the same. The Sheriff Defendants provided no other authority suggesting that a plaintiff cannot procedurally maintain an action against both an official and the entity he represents.

Accordingly, the Court will not enter judgment in Sheriff Buncich's favor on this argument.

B. <u>Claims Against the Sheriff's Department</u>

The Sheriff Defendants moved for summary judgment on all Plaintiff's claims asserted against the Sheriff's Department.[3] The arguments in the Sheriff Defendants' summary judgment briefs, however, address only Counts I and IV of the Complaint. Plaintiff's Complaint lists four counts. Count I, titled "In General," alleges that the "defendants acted under color of state law to deprive" Plaintiff of her constitutional rights. Counts II through IV, titled "Unreasonable Search and Seizure," "42 U.S.C. §1983 False Arrest," and "Failure to Implement Appropriate Policies, Procedures, Customs, and Practices," appear to be variations of the Count I "In General" 1983 claim. Therefore, considering the Counts together, the Sheriff Defendants' argument that Plaintiff's Count I should be dismissed because she has not pleaded sufficient facts to support a 1983 claim is not convincing, as Count I appears to be merely an introduction to Counts II through IV.

The Complaint implicates two versions of potential municipal liability. First, Plaintiff alleges

---

[3]As noted in Section A, the claims against Sheriff Buncich in his official capacity are identical to those against the Sheriff's Department. *See Yeksigian*, 900 F.2d at 103. Therefore, this Section will discuss only the Sheriff's Department but shall apply equally to Plaintiff's official-capacity claims against Sheriff Buncich.

that the Sheriff's Department's canine use-of-force policy in effect at the time of her alleged injury was constitutionally defective. Second, Plaintiff alleges that the Sheriff's Department is liable for the alleged deprivation of her rights because it failed to implement appropriate policies regarding canine use and to adequately train Officer Parker in the use of canine force.

*1. Canine use-of-force policy*

The Sheriff Defendants assert that the Sheriff's Department cannot be liable for Plaintiff's section 1983 claim because they maintained an appropriate and express policy regarding the use of force in canine apprehensions. Plaintiff argues that the policy was constitutionally inadequate and that it caused the alleged deprivation of her rights.

The standard for assessing a municipal entity's liability for a defective policy under section 1983 was established in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, a municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government is responsible under § 1983." *Monell*, 436 U.S. at 694. To establish that a defendant acting as a governmental entity is liable for the constitutional deprivation, a plaintiff must demonstrate:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Lewis v. City of Chi.*, 496 F.3d 645, 656 (7th Cir. 2007) (quoting *Phelan v. Cook Cnty.*, 463 F.3d 773, 789 (7th Cir. 2006).

In this case, the Sheriff's Department maintained an express policy concerning the use of

7

canine force, so the first version of municipal liability is applicable. The policy reads, in relevant part, as follows:

> Apprehension:
> Police K-9s are trained to pursue and apprehend persons on command. When a K-9 is used to pursue, it is essential that each officer adhere to the following guidelines:
> 1. Prior to release of K-9 the Handler should take necessary steps to ensure the person to be apprehended is the correct suspect. The K-9 Handler should, if possible, verbally warn the suspect that the K-9 will be released.

Plaintiff argues that this policy is defective because it does not "make any distinction between hot pursuits vs. investigations, threatening vs. non-threatening circumstances, or warrant vs. warrantless searches." Plaintiff also argues that the policy is "vague" and "allowed Officer Parker to believe he was justified . . . to unleash his dog on an innocent by-stander." Plaintiff additionally appears to be arguing that Officer Parker had policymaking authority such that the Sheriff's Department could be subject to liability through his actions alone. The Sheriff Defendants assert that Plaintiff did not plead a claim that the policy was constitutionally defective and argue that Office Parker was not a final decision maker so as to subject the Sheriff's Department to liability.

The Complaint alleges that the alleges that the policy was defective. Plaintiff cannot prevail on this claim be cause she argues that Officer Parker did not comply with the policy the night of Plaintiff's arrest. Specifically, Plaintiff alleges that "at no time did Officer Parker issue a warning to Megan that he would release his dog in response to non-compliance with an order." On the other hand, the Sheriff Defendants assert that Officer Parker warned Plaintiff that, if she did not get on the ground in response to Officer Parker's commands, "the police dog would be released."

Municipal liability applies only to "an express policy that, *when enforced*, causes a constitutional deprivation." *Lewis*, 496 F.3d at 656 (quoting *Phelan*, 463 F.3d at 789) (emphasis

added). The canine use-of-force policy required that the canine officer should "if possible, verbally warn the suspect" that the canine would be released. Nothing in the record suggests that it was not possible for Officer Parker to warn Plaintiff that the dog would be released. According to Plaintiff, he simply did not make the warning required by the policy. Therefore, Officer Parker was not enforcing the policy – more to the point, the policy could not have caused Plaintiff's alleged injury – and for this reason Plaintiff's defective-policy claim against the Sheriff's Department must fail as a matter of law. *See Cornfield v. Consol. High Sch.*, 991 F.2d 1316, 1324 (7th Cir. 1993) ("[P]laintiffs cannot claim municipal liability unless they can demonstrate that the enforcement of its policy was the moving force behind the constitutional violation.") (citations and quotations omitted).

Plaintiff repeatedly asserts that Officer Parker believed that his use of force was justified under the policy and, therefore, the Sheriff's Department is liable for maintaining an unconstitutional policy. However, if, as Plaintiff hopes to prove, Officer Parker did not give Plaintiff a warning, that failure would be in direct conflict with the express terms of the use-of-force policy. Plaintiff has provided no cases suggesting that an individual officer's belief concerning a particular course of action, no matter how inconsistent with an express policy, will generate liability for the relevant state entity.

Furthermore, any argument that Plaintiff might have raised that Officer Parker, himself, retained "final policymaking authority" subjecting the Sheriff's Department to liability cannot succeed. Nothing in the current record suggests that Officer Parker retained either delegated or statutory policymaking authority. *See Eversole v. Steele*, 59 F.3d 710, 715-16 (7th Cir. 1995) (noting that under Indiana law "the county sheriff is the final policymaker for law enforcement in his or her

9

particular jurisdiction" and that "discretion to make final decisions to carry out the policies of local law enforcement does not equate to policymaking authority").

Accordingly, summary judgment is appropriate in favor of the Sheriff's Department and Officer Buncich, in his official capacity, on Plaintiff's defective-policy claim.

### 2. *Failure to implement policies or train officers*

Plaintiff alleges that the Sheriff's Department is liable under section 1983 due to its failure to implement appropriate policies or to train its officers in the appropriate use of canine force. The Sheriff Defendants argue that Plaintiff's claims against the Sheriff's Department also cannot survive summary judgment because Plaintiff cannot show that the Sheriff's Department acted with "deliberate indifference" in allegedly failing to implement policies or to train its officers.

A municipality may be subject to liability where it takes no action. *Jones v. City of Chi.*, 787 F.2d 200, 204 (7th Cir. 1986). However, inaction by municipal officials will not impart liability on the municipality unless there is "an extremely high degree of culpability for inaction." *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983). A municipal entity could be held liable where "the failure to supervise or the lack of a proper training program was so severe as to reach the level of gross negligence or deliberate indifference to the deprivation of the plaintiff's constitutional rights." *Id.* (quoting *Owens v. Haas*, 601 F.2d 1242, 1246 (2nd Cir. 1979)) (internal quotations omitted).

The undisputed facts in this case reveal that the Sheriff's Department had enacted a policy regarding the use of canine force, as described above. Even assuming other policies could be enacted to further protect Plaintiff's constitutional rights, Plaintiff still cannot satisfy her burden. The current policy, which requires that the canine handler to verify the identity of the suspect pursued and to give a warning if possible, appears to have been crafted with the intention of protecting suspects'

constitutional rights, frustrating Plaintiff's ability to demonstrate that the Sheriff's Department's failure to enact additional policies was grossly negligent or deliberately indifferent. *See Lenard*, 699 F.2d at 885.

The facts also show that Officer Parker and his canine attended a five-week training course in 2008. Plaintiff provided no evidence that the Sheriff's Department was aware of any problem with Officer Parker's canine use, or that the five-week training course did not properly prepare Officer Parker for canine use. A jury might infer that Officer Parker should have received more training; however, this alone does not rise to the level of "gross negligence," which would require a showing that the training was so deficient that the Sheriff's Department allowed him to serve as a canine officer despite a very high and apparent threat that his lack of training would result in constitutional violations. Plaintiff has not provided any evidence to this effect. Without more, the current record cannot support a finding that the Sheriff's Department was grossly negligent in failing to enact additional policies or failing to train Officer Parker. Therefore, summary judgment is appropriate in favor of the Sheriff's Department and Officer Buncich, in his official capacity, on Plaintiff's 1983 claims.

  C.  <u>Sheriff Buncich's Individual Liability</u>

The Sheriff Defendants also assert that Plaintiff's claims against Defendant Buncich in his individual capacity must fail because Defendant Buncich did not personally participate in Plaintiff's arrest. The Sheriff Defendants further argue that even if Defendant Buncich could be held liable in his individual capacity, he is entitled to qualified immunity. Plaintiff did not respond directly to these arguments.

In the Seventh Circuit, "[i]ndividual liability for damages under section 1983 is predicated

11

upon personal responsibility." *Schultz v. Baumgart*, 738 F.2d 231, 239 (7th Cir. 1984) (citations omitted). Put differently, an "*individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). In some circumstances, a supervisor may be liable for the acts of a subordinate's actions. *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).

> Supervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves the conduct and the basis for it. That is, to be liable for the conduct of subordinates, a supervisor must be personally involved in that conduct. Supervisors who are merely negligent in failing to detect and prevent subordinates' misconduct are not liable.

*Id*; *see also Escobedo v. City of Fort Wayne*, 1:05-CV-424-TLS, 2008 WL 1971405, at *35 (N.D. Ind. May 5, 2008). In order to establish liability "against a supervisory official, there must be a showing that the official knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)

The Complaint does not allege, and Plaintiff has not shown, that Sheriff Buncich personally participated in Plaintiff's arrest. Plaintiff also has not provided any evidence that Sheriff Buncich instructed Officer Parker to arrest Plaintiff. There is no evidence whatsoever that, on the night of the arrest, Sheriff Buncich even knew what was happening at the Musgrave residence.

Plaintiff argues that the "Sheriff ha[d] constructive knowledge of the use of K-9s by Officer Parker since [Officer Parker] has filed '10s' of K-9 apprehension reports." The fact that Sheriff Buncich may have had "constructive knowledge" of Officer Parker's use of canines in the past is not enough to prove that Sheriff Buncich "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act" as required for supervisory-official liability in 1983 cases. *Rascon*, 803 F.2d at 274. In continuing to allow Officer Parker to use canines, Sheriff

Buncich is not "reckless" simply because Sheriff Buncich knew Officer Parker had used canines in the past.

The Complaint alleges that Officer Parker is an "aggressive canine officer who deploys his canine with little or no provocation and without objectively reasonable cause." Similarly, the complaint states that Officer Parker had "minimal training" in using canines. However, the record contains no evidence concerning the quality of Officer Parker's prior canine use, and Plaintiff does not include reference to any in her briefs. The only information in the record is that Officer Parker's canine has been used to apprehend a suspect less than twenty times and that, at least for some of those apprehensions, Officer Parker was involved. As discussed, the current record also reveals that Officer Parker and his canine went to a five-week training in May 2008. Even viewing these facts in the light most favorable to Plaintiff, no reasonable jury could conclude, on the record presented by Plaintiff, that Sheriff Buncich knew of any significant problem with Officer Parker's canine use before Plaintiff's arrest. While there is a tenuous inference to be made on the current record leading to the conclusion that Officer Parker should have received more training, the Court is not required to make all possible inferences, only those that are "justifiable." *Anderson*, 477 U.S. at 255.

Even with all justifiable factual inferences in Plaintiff's favor and viewing the facts in the light most favorable to Plaintiff, there is no basis on which to conclude that Sheriff Buncich was "personally involved" in Officer Parker's conduct or that Sheriff Buncich "approve[d] of [Officer Paker's] conduct and the basis for it." *Chavez*, 251 F.3d at 651. Similarly, there are no facts supporting a conclusion that Sheriff Buncich "knowingly, willfully, or at least recklessly" caused Plaintiff's alleged deprivation. *Rascon*, 803 F.2d at 274.

For these reasons, the Court will enter summary judgment in Sheriff Buncich's favor on all

Plaintiff's claims against him in his individual capacity.

**V.      Conclusion**

For the foregoing reasons and consistent with the conclusions above, the Court hereby **GRANTS** the Sheriff Defendants' Motion for Summary Judgment [DE 31] and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant John Buncich, in his individual capacity and in his official capacity, and the Lake County Sheriff's Department on all Plaintiff's claims.

Accordingly, the only claims that remain pending in this case are Plaintiff's claims against Officer Parker.

SO ORDERED this 30th day of August, 2016.

>  s/ John E. Martin
>  MAGISTRATE JUDGE JOHN E. MARTIN
>  UNITED STATES DISTRICT COURT

cc:      All counsel of record